**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| AZUMA CORPORATION, a tribally-chartered corporation wholly-owned by the Alturas Indian Rancheria, a federally-recognized Indian Tribe<br>P.O. Box 340<br>Alturas, CA 96101; | |
| *Plaintiff,* | |
| v. | |
| MERRICK GARLAND, in his official capacity, Attorney General of the United States<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530; | **Case No.** |
| UNITED STATES DEPARTMENT OF JUSTICE<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530; | **COMPLAINT** |
| STEVEN DETTELBACH, in his official capacity, Director<br>U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives<br>99 New York Avenue, NE<br>Washington, DC 20226; and | |
| UNITED STATES BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES<br>99 New York Avenue, NE<br>Washington, DC 20226, | |
| *Defendants*. | |

COMES NOW Plaintiff, Azuma Corp. ("Azuma"), by and through undersigned counsel, and complains of the Defendants as follows:

## I.    INTRODUCTION

1.    Plaintiff Azuma, a federally licensed cigarette manufacturer that is wholly owned by the Alturas Indian Rancheria, a federally recognized Indian tribe, brings this Complaint against Defendants for unlawfully placing Azuma on the "Non-Compliant List" pursuant to the Prevent All Cigarette Trafficking Act, Pub. L. 111-154, 24 Stat. 1088, codified in part at 15 U.S.C. §§ 375-378 (the "PACT Act").

## II.    PARTIES

2.    Plaintiff Azuma Corp. is a 100% tribally owned entity established by the federally recognized Alturas Indian Rancheria ("Tribe") under its tribal law.  Azuma has its principal place of business on the Alturas Indian Rancheria in Alturas, California.  Azuma holds a Permit to Manufacture Tobacco Products from the United States Department of Treasury, Alcohol, Tobacco Tax and Trade Bureau, as a Manufacturer of Tobacco Products ("Permit").  Pursuant to its Permit, Azuma manufactures cigarettes sold under the brand names "Tracker," "Sands," "Heron," "Black," and "Tucson."

3.    Defendant Merrick Garland is the Attorney General of the United States (the "Attorney General"), with offices located at U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530.  He is sued in his official capacity.

4.    Defendant United States Department of Justice ("DOJ") is an executive agency of the United States, with offices located at 950 Pennsylvania Avenue, NW, Washington, DC 20530.

5.  Defendant Steven Dettelbach is the Director of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, a bureau within the U.S. Department of Justice, with offices located at 99 New York Avenue, NE, Washington, DC 20226.  He is sued in his official capacity.

6.  Defendant United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") is a bureau within the U.S. Department of Justice, with offices located at 99 New York Avenue, NE, Washington, DC 20226.

## III.   JURISDICTION AND VENUE

7.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1337 (act regulating commerce) and 1361 (mandamus against federal official), as hereinafter more fully appears.

8.  This Court has jurisdiction to grant the declaratory and injunctive relief requested in this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the Mandamus and Venue Act, 28 U.S.C. § 1361; and the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

9.  Venue in this action lies in this Court pursuant to 28 U.S.C. § 1391(e)(1)(A) and (B), in that:  (i) this an action where the Defendants are agencies of the United States and officers and employees of such agencies acting in their official capacities; (ii) one or more of the Defendants resides within the District of Columbia; and (iii) a substantial part of the events or omissions giving rise to the claims in this action occurred within the District of Columbia.

## IV.   STATEMENT OF FACTS

10. The Alturas Indian Rancheria is a federally recognized Indian Tribe, 88 Fed. Reg. 2,112 (Jan. 12, 2023), and is the sole owner of Azuma Corporation, an entity chartered pursuant

to the laws of the Tribe. Net revenues generated by Azuma are utilized to support the Tribe's governmental, social welfare, and economic development activities.

11. On May 22, 2008, Azuma was granted a Permit as a Manufacturer of Tobacco Products from the United States Department of the Treasury, Alcohol and Tobacco Tax and Trade Bureau. Azuma has maintained the Permit since May 22, 2008.

12. In or about May 2018, Azuma began manufacturing cigarettes under various proprietary trade names.

13. Azuma and the Tribe financed, built and outfitted a manufacturing facility on the Alturas Indian Rancheria. They purchased the rights to manufacture cigarettes using tobacco blends with an FDA-compliant "Substantial Equivalence" certificates. They purchased machines and other equipment for making and packing cigarettes. Azuma hired and trained employees, including members of the Tribe, to manage and operate the business.

14. Azuma-manufactured cigarettes comply with the Family Smoking Prevention and Tobacco Control Act, Pub. L. 111-31 (2009), codified in part at 21 U.S.C. §§ 387-387v, and the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331 et seq. Azuma-manufactured cigarettes are also tested, certified, and marked as fire safe under the California Cigarette Fire Safety and Firefighter Protection Act, Cal. Health & Safety Code § 14950 et seq. The FDA conducted an inspection of Azuma's manufacturing facility and operations in August 2022 and reported no issues of concern.

15. Once manufactured, Azuma sells its cigarettes to retailers that are wholly owned by other federally recognized Indian tribes ("Tribal Retailers") within the Indian Country of the Tribal Retailers and located within the geographic boundaries of the State of California. The Tribal Retailers are licensed and regulated by the laws of their respective tribes and are

not required to be licensed by the State of California.  *See Moe v. Confederated Salish & Kooteniai Tribes of the Flathead Reservation*, 425 U.S. 463, 480-81 (1976) (holding that a state may not require a member of a tribe who sell cigarettes on an Indian reservation to possess a state-issued license); *accord, Oklahoma Tax Comm'n v Bruner*, 815 P.2d 667, 669-670 (Okla. 1991) (holding that State of Oklahoma lacks  authority to impose license and permit requirements on Indian cigarette retailer).  Because Azuma's cigarette sales are to tribally owned entities and take place in the Indian Country of the Tribal Retailers, such sales are regulated by the Indian Trader Statutes, 25 U.S.C. §§ 261-264. *See Central Machinery Co. v. Arizona State Tax Comm'n*, 448 U.S. 160 (1980).

16.     Azuma's cigarettes travel directly from the Alturas Rancheria to the Indian Country of the Tribal Retailers, and do not travel in interstate commerce at any time.  The Tribal Retailers sell the cigarettes to consumers within their respective tribes' Indian Country.  A portion of the sales from the tribal retailers are to members of their respective tribes or other federally-recognized tribes.  In addition, a portion of the Tribal Retailers' sales occur at tribally-owned gaming facilities that are regulated by the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701, *et seq*., and gaming compacts with the State of California. *See* Calif. Gov. Code §§ 12012.25, *et seq.*

17.     Under California law, cigarette sales by Indians or Indian organizations (including "corporations organized under tribal authority and wholly owned by Indians") to Indians or Indian organizations in Indian Country are not subject to California sales tax. Cal. Code Regs. tit. 18, § 1616(d)(3)(A).  The State's regulations define "Indian" as "any person of Indian descent who is entitled to receive services as an Indian from the United States Department of the Interior." *Id.* at § 1616(d)(2).

5

### A. Federal Law Regarding State Taxation in Indian Country

18.  "States are categorically barred from placing the legal incidence of an excise tax 'on a tribe or tribal members for sales made inside Indian country' without congressional authorization," and even a state tax imposed on a non-Indian in Indian Country "may nonetheless be pre-empted if the transaction giving rise to the tax liability occurs on the reservation and the imposition of the tax fails to satisfy the *Bracker* interest-balancing test." *Wagnon v. Prairie Band Potawatomi Nation*, 546 U.S. 95, 101-02 (2005) (quoting *Okla. Tax Comm'n v. Chickasaw Nation*, 515 U.S. 540, 459 (1995)). Under the *Bracker* interest-balancing test, in determining whether a state tax imposed upon a non-Indian in Indian Country is preempted by federal law, courts conduct "a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law." *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 145 (1980).

19.  In weighing the federal, state and tribal interests for purposes the *Bracker* balancing test, a tribe's interest "is strongest when the revenues are derived from value generated on the reservation by activities involving the Tribes and when the taxpayer is the recipient of tribal services." *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 156-57 (1980).  A tribe generates value on its reservation where it has "built modern facilities which provide recreational opportunities and ancillary services to [its] patrons, who do not simply drive onto the reservations, make purchases and depart, but spend extended periods of time there enjoying the services the Tribe provides."  *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 219 (1987).

20. Under the *Bracker* balancing test, the "firm federal policy of promoting tribal self-sufficiency and economic development" weighs in favor of finding that a state tax is preempted by federal law. *Bracker*, 448 U.S. at 143-44

21. For transactions between a tribe and non-Indians in Indian Country, "if the legal incidence of the [state] tax rests on non-Indians, [and] no categorical bar prevents enforcement of the tax; [and] if the balance of federal, state, and tribal interests favors the State, and federal law is not to the contrary, the State may impose its levy, … and may place on a tribe or tribal members *minimal burdens* in collecting the toll." *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 459 (1995) (emphasis supplied).

### B. The Master Settlement Agreement and California's Escrow and Directory Statutes

22. In the 1990s, 46 states brought separate suits against major cigarette manufacturers and related entities to recover healthcare costs the states claimed they had incurred as a direct result of smoking, as well as corrective action regarding industry tactics such as targeting their products to youth and intentionally covering up the known health impacts of smoking. California filed its lawsuit in 1997 alleging claims against numerous major cigarette manufacturers ("Big Tobacco") seeking recovery of Medi-Cal expenditures, civil penalties and injunctive relief under California's Unfair Competition Law, False Claims Act, and Cartwright Act.

23. In 1998, 46 states, including California, entered into the 1998 Tobacco Master Settlement Agreement ("MSA"). The MSA established a framework for Big Tobacco to make massive payments to the settling states on a long-term basis. In exchange for adding hundreds of millions of dollars – and in California's case, billions of dollars – to the states' revenue streams, Big Tobacco demanded that the states offer them protection from the potential

competitive disadvantages that Big Tobacco claimed would result from the payment burdens they accepted in the MSA.

24. In the discussions leading up to this landmark public-private agreement, neither the states' attorneys general nor Big Tobacco's representatives ever invited the participation of federally-recognized Tribal governments ("Tribal governments"). Nor did the settling states and Big Tobacco seek the involvement of Congress which, since the adoption of the United States Constitution, exercises exclusive control over commerce with sovereign Indian tribes within its borders, independent of the states.

25. Even though sovereign Indian tribes are not subject to state regulation within their own Indian Country, Big Tobacco and the states crafted the MSA such that it purports to have universal application, even within Indian Country and to commerce involving only Indian tribes. Thus, the MSA provided that the states – including California – would enforce their cigarette and tobacco laws everywhere within the geographic boundaries of the states, including Indian Country.

26. The result of California's attempt to include Indians and Indian tribes as subjects of the enforcement provisions of the MSA, but otherwise to have excluded them entirely from participation in or beneficiaries of the MSA, has been uncertainty and confusion with respect to the obligations of tribal and reservation businesses engaged in tobacco commerce, and California's responsibility for controlling that commerce as part of its responsibilities under the MSA. This lack of certainty has led to a series of disputes between tribes and California, and between tribes and other states throughout the country, since 1998. It has also caused Big Tobacco to question whether California has satisfied its obligations under the MSA. In recent years, Big Tobacco withheld payments from California for failing to diligently enforce its MSA laws, including with respect to the on-reservation activities of

Tribal governments. The issue of diligent enforcement of the escrow provisions of the MSA was submitted to arbitration. This dispute was resolved when California and Big Tobacco entered yet another settlement agreement specifically obligating the State to target Tribal governments and their on-reservation activities. This has left Tribal governments engaged in tobacco commerce, like the Alturas Indian Rancheria, to operate with the threat of enforcement hanging over their heads. California, bound by its private obligations to non-Native tobacco manufacturers, is using the MSA to force Tribal governments, Tribal leaders, and Tribal employees to comply with the State's MSA laws or face civil and criminal penalties. The effect has been chilling on Tribal economies.

27. The payments the MSA required the Participating Manufacturers to make, along with the MSA's prohibition on deceptive marketing practices, caused the Participating Manufacturers concern that the combined cost impacts of the MSA would threaten their dominance in the market and thereby threaten the massive profits they realized from the sale of cigarettes. Therefore, Participating Manufacturers demanded protections against competition from both smaller cigarette manufacturers that had not been accused of wrongdoing and manufacturers that might enter the market after the execution of the MSA – neither of whom had any reason to become after-the-fact signatories to the agreement.

28. One of the most important protections against competition afforded the Participating Manufacturers under the MSA is the Non-Participating Manufacturer ("NPM") Adjustment. The NPM Adjustment provides that the payments by the Participating Manufacturers can be reduced – in significant amounts – if it is determined that Participating Manufacturers have lost market share as a result of competition from Non-Participating Manufacturers. The only way a state can avoid losing some or all of its allocable percentage of the MSA

payments is if it has enacted and "diligently enforced" a "Qualifying Statute." The "Qualifying Statute" is a statute that requires NPMs to deposit money into an escrow account based on the number of cigarettes the NPM sold in a state the prior year. The amount of the escrow payment required is roughly equal to the per -cigarette-sold amount the PMs must pay to the states annually under the MSA.

29.    The overriding purpose of the NPM Adjustment and one of the primary stated purposes of the escrow requirement imposed on Non-Participating Manufacturers is to guarantee PMs price parity with NPMs.

30.    California's MSA "Qualifying Statute" is the California Reserve Fund Statute ("Escrow Statute"), California Health and Safety Code sections 104555-104558. The Escrow Statute requires NPMs selling cigarettes in the State either to join the MSA or to place funds in escrow at a specified rate for each cigarette sold in California during the previous year. Cal. Health & Safety Code § 104557(a). In addition, the Escrow Statute requires every NPM to "certify" to the Attorney General each year that it is in compliance with its escrow obligations. Cal. Health & Safety Code § 104557(c). The NPM's escrow obligations are calculated based upon the "units sold" during the prior year. Cal. Health & Safety Code § 104557(a)(2).  The term "units sold" is defined as the "number of individual cigarettes sold to a consumer in the state by the applicable tobacco product manufacturer, whether directly or through a distributor, retailer or similar intermediary or intermediaries, during the year in question . . .." Cal. Health & Safety Code § 104556(j). The term "units sold" "shall not include cigarettes  . . . sold by a Native American tribe to a member of that tribe on that tribe's land, or that are otherwise exempt from state excise tax pursuant to federal law." *Id.*

31.    Shortly after the settling states and the PMs executed the MSA, states (including California) began experiencing difficulties enforcing their "Qualifying Statutes." Consequently, these states (including California) began experiencing reductions in MSA payments. Under pressure from the Participating Manufacturers, and in an effort to shore up MSA payments, the states (including California) began enacting "directory" statutes (also known as "contraband" statutes or "complementary" statutes) intended to ensure that NPMs made escrow payments.

32.    California's "directory" statute is found at California Revenue and Taxation Code section 30165.1 and is commonly known as the California Complementary Statute, or California Tobacco Directory Law ("Directory Statute"). The Directory Statute requires the California Attorney General to maintain and publish a list of tobacco product manufacturers and tobacco brand families that have been approved for sale in California. Cal. Rev. &Tax. Code § 30165.1(c). To be included on the list, a tobacco manufacturer must certify that it is either a Participating Manufacturer or it is an NPM that is in full compliance with the Escrow Statute and all of California's tobacco product, licensing, and manufacturing laws. Cal. Rev. & Tax. Code § 30165.1(b).

33.    The Directory Statute prohibits any person from selling, offering for sale, possessing for sale, shipping or otherwise distributing into California or within California, or importing for personal consumption in California, any cigarettes of a tobacco manufacturer or brand family that is not included in the Attorney General's tobacco directory. Cal. Rev. & Tax. Code § 30165.1(e)(2).

34. The Directory Statute also prohibits any person from affixing any tax stamp to any package of cigarettes or paying the tobacco products taxes, on cigarettes and tobacco products that are not listed in the directory. Cal. Rev. & Tax. Code § 30165.1(e)(1).

35. The California Cigarette and Tobacco Products Tax Law generally defines the phrases "[i]n this State" and "in the State" to include "all territory within [the exterior limits of the State of California] owned by or ceded to the United States of America." Cal. Rev. & Tax. Code § 30013.

36. Thus, the California Cigarette and Tobacco Products Tax Law purports to impose the prohibitory provisions of the Directory Statute on all persons and entities – even Indian tribal governments operating in Indian Country.

### C. The Tribal-State Gaming Compact

37. States may not impose taxes on non-member purchases made at a tribal casino operating pursuant to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701, *et seq.*, because such taxes are preempted by IGRA. See *Flandreau Santee Sioux Tribe v. Noem*, 938 F.3d 928, 937 (8th Cir. 2019).

38. The Tribal-State gaming compacts between the Indian tribes that own the Tribal Retailers and the State of California, which were approved by the California legislature, acknowledge that California state law and regulations regarding tobacco do not apply to gaming facilities owned and operated by such Tribes. *See*, *e.g.,* Tribal-State Compact Between the State of California and the Alturas [Indian] Rancheria, at §§ 8.1.2, 10.1; Tribal-State Compact Between the State of California and the Paskenta Band of Nomlaki Indians, at § 9.1(b), 12.1.

39.    A portion of the cigarettes sold by Azuma to the Tribal Retailers are sold at retail to consumers at tribal gaming facilities. As such, California's cigarette excise taxes do not apply to such cigarette sales.

### D. The PACT Act

40.    On March 31, 2010, President Obama signed into law the Prevent All Cigarette Trafficking ("PACT") Act, Pub. L. 111-154, 24 Stat. 1088, codified in part at 15 U.S.C. §§ 375-378.

41.    ATF is the federal agency within DOJ charged with the authority and responsibility of administering the PACT Act. *See* 28 C.F.R. § 0.130 (providing that the Director of ATF shall "[i]nvestigate, administer, and enforce the laws related to … tobacco").

### 1. Delivery Sales/Delivery Sellers

42.    The overriding purpose of the PACT Act was to deal with "remote" or "delivery sales" of cigarettes and smokeless tobacco. *See* PACT Act §§ 1(b), 1(c), note following 15 U.S.C. § 375, and PACT Act § 8, 124 Stat. 1111. To accomplish its goals, the PACT Act substantially amended the Jenkins Act of October 19, 1949, c. 699, 63 Stat. 884, 15 U.S.C. § 375 et seq., to require all "delivery sellers" of cigarettes and tobacco products to, *inter alia*, comply with state tax and tobacco regulatory laws, including state laws imposing tobacco excise taxes and licensing and tax-stamping requirements "[w]ith respect to delivery sales into a specific State and place...as if the delivery sales occurred entirely within the specific State and place." 15 U.S.C. § 376a(a)(3).

43.    The PACT Act defines a "delivery seller" as a person making a "delivery sale," 15 U.S.C. § 375(6). A "delivery sale" is defined as any sale to a "consumer" that is submitted by means of a telephone or other method of voice transmission, the mails, the Internet or other online service, or where the seller is otherwise not in the physical presence of buyer when the order

is made, or where the cigarettes are delivered to the buyer by common carrier, private delivery service, or other method of remote delivery. 15 U.S.C. § 375(5). The PACT Act's definition of "consumer" expressly excludes any person "lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or smokeless tobacco." 15 U.S.C. § 375(4)(B).

### 2. The "Non-Compliant List"

44. The PACT Act mandates that the Attorney General create a list of unregistered or noncompliant delivery sellers (the "Non-Compliant List"). 15 U.S.C. §376a(e)(1). The Attorney General must distribute the Non-Compliant List to a broad array of public officials and private persons, including every state's attorney general and tax administrator; common carriers and other persons that deliver small packages to consumers in interstate commerce; the U.S. Postal Service; and any other person the Attorney General deems can "promote the effective enforcement" of the Act. 15 U.S.C. § 376a(e)(1)(A)(i).

45. The PACT Act requires the Attorney General to "publicize" the Non-Compliant List and to make it available to any other person engaged in the business of interstate deliveries or who delivers cigarettes or smokeless tobacco in or into any State. 15 U.S.C. § 376a(e)(1)(A)(ii).

46. The Attorney General must update and distribute the Non-Compliant List at least once every four months. 15 U.S.C. § 376a(e)(1)(C).

47. In preparing or updating the Non-Compliant List, the Attorney General is required to "use reasonable procedures to ensure maximum possible accuracy and completeness of the records and information relied on for the purpose of determining that a delivery seller is not in compliance . . . ." 15 U.S.C. § 376a(e)(1)(E)(i).

48.   The Attorney General is required to make a "reasonable attempt to send notice to the delivery seller…that the delivery seller is being placed on the [L]ist" not later than 14 days before including a delivery seller on the Non-Compliant List. 15 U.S.C. § 376a(e)(1)(E)(ii). Such notice must also cite "the specific reasons for which the delivery seller is being placed on the list." *Id*.

49.   The PACT Act requires the Attorney General to provide an opportunity to the delivery seller to challenge its placement on the List, 15 U.S.C. § 376a(e)(1)(E)(iii), and to investigate each such challenge by "contacting the relevant Federal, State, tribal and local law enforcement officials" and by providing "the specific findings and results of the investigation to the delivery seller not later than 30 days after the date on which the challenge was made." 15 U.S.C. § 376a(e)(1)(E)(iv).

50.   If the Attorney General determines that the basis for including the delivery seller on the Non-Compliant List is inaccurate, based on incomplete information, or cannot be verified, then the PACT Act requires that the Attorney General must promptly remove the delivery seller from the Non-Compliant List and notify the appropriate government authorities thereof. 15 U.S.C. § 376a(e)(1)(E)(v).

51.   A state, local, or tribal government shall provide the Attorney General with all known names, addresses, website addresses, or other primary contact information of any delivery seller that, among other things, offers for sale or makes sales of cigarettes or smokeless tobacco "in or into the State, locality, or tribal land" and that fails "to register with or make reports to the respective tax administrator as required" by the Act or that "has been found in a legal proceeding to have otherwise failed to comply" with the Act. § 376a(e)(6)(A)(i).

52.    The Attorney General must include in the Non-Compliant List the names of any noncomplying delivery seller "identified by any State, local, or tribal government" and must distribute the Non-Compliant List to "the attorney general or chief law enforcement official and the tax administrator of any government" that submits such information. 15 U.S.C. § 376a(e)(1)(D). The Attorney General must include any addition to the Non-Compliant List on or after the date that is 30 days from the Attorney General's receipt of such information from a state, local, or tribal government. § 376a(e)(7)(A).

53.    Upon receiving written notice that a state, local, or tribal government no longer desires to submit such information, the Attorney General must remove from the Non-Compliant List "any persons that are on the [L]ist solely because of the prior submissions of the government of the list of the government of noncomplying delivery sellers of cigarettes or smokeless tobacco or a subsequent update or correction by the government." 15 U.S.C. § 376a(e)(6)(C).

54.    The PACT Act prohibits any person who receives the Non-Compliant List from knowingly delivering any package for any person whose name appears on the List unless the deliverer knows or believes in good faith that the package contains no cigarettes or smokeless tobacco; the delivery is to one lawfully engaged in the business of manufacturing, distributing, or selling cigarettes or smokeless tobacco; or the package weighs more than 100 pounds and the deliverer does not know or have reasonable cause to believe it contains cigarettes or smokeless tobacco. 15 U.S.C. § 376a(e)(2)(A).

55.    Any common carrier or other person making a delivery subject to the PACT Act must not be required or otherwise obligated to determine whether the Non-Compliant List "is complete, accurate, or up-to-date," 15 U.S.C. § 376a(e)(9)(A)(i), and may not be subject to

liability under any provision of law for, among other things, refusing to make any delivery at all on behalf of a person on the Non-Compliant List. 15 U.S.C. § 376a(e)(9)(C). Common carriers or other persons that deliver cigarettes must implement updates to the Non-Compliant List "[c]ommencing on the date that is 30 days after the date of the distribution or availability of any updates . . . ." 15 U.S.C. § 376a(e)(2)(B).

56.    For purposes of the PACT Act, a delivery sale is deemed to have occurred in the state and place where the buyer obtains personal possession of the cigarettes or smokeless tobacco, and a delivery pursuant to a delivery sale is deemed to have been initiated or ordered by the delivery seller. 15 U.S.C. § 376a(f).

### 3.    Tribal Protections in the PACT Act

57.    The PACT Act expressly leaves unchanged existing Federal law controlling the sovereign and regulatory relations between Tribal, State and local governments.

58.    Section 5(a) of the PACT Act provides:

IN GENERAL.--Nothing in this Act or the amendments made by this Act shall be construed to amend, modify, or otherwise affect—

(1) any agreements, compacts, or other intergovernmental arrangements between any State or local government and any government of an Indian tribe (as that term is defined in section 4(e) of the Indian Self–Determination and Education Assistance Act (25 U.S.C. [§ 5304(e)]) relating to the collection of taxes on cigarettes or smokeless tobacco sold in Indian country;

(2) any State laws that authorize or otherwise pertain to any such intergovernmental arrangements or create special rules or procedures for the collection of State, local, or tribal taxes on cigarettes or smokeless tobacco sold in Indian country;

(3) any limitations under Federal or State law, including Federal common law and treaties, on State, local, and tribal tax and regulatory authority with respect to the sale, use, or distribution of cigarettes and smokeless tobacco by or to Indian tribes, tribal members, tribal enterprises, or in Indian country;

(4) any Federal law, including Federal common law and treaties, regarding State jurisdiction, or lack thereof, over any tribe, tribal members, tribal enterprises, tribal

reservations, or other lands held by the United States in trust for one or more Indian tribes; or

(5) any State or local government authority to bring enforcement actions against persons located in Indian country.

59.    Section 5(e) of the PACT Act provides that "[a]ny ambiguity between the language of this section [i.e., Section 5] or its application and any other provision of this Act shall be resolved in favor of this section [i.e., Section 5]." Pub. L. 111-154, § 5(e), note following 15 U.S.C. § 375.

### E.    ATF'S Non-Compliance Determination and Azuma's Challenge

60.    On or about December 19, 2018, the State of California requested ATF to place Azuma on the Non-Compliant List, pursuant to the PACT Act, 15 U.S.C. 376a(e)(1)(D), asserting that Azuma was required to register and submit reports to the California State tax Commissioner pursuant to the PACT Act, 15 U.S.C. 376a(e)(1)(D), for shipments of cigarettes from Azuma to Tribal Retailers located in Indian Country.

61.    On or about February 28, 2019, ATF issued a notice that it was considering placing Azuma on the Non-Compliant List, stating, in part, "Our information indicates that you are currently making delivery shipments into California Indian country and failing to comply with 15 U.S.C. § 376(a)(1) and (a)(2) (the "February 2018 ATF Notice"). You are not filing a report with the State of California as required." ATF mailed the notice to an incorrect address, and the notice was not received by Azuma.

62.    Azuma first learned that ATF considered placing Azuma on the Non-Compliant List in late September 2019, after it received a correspondence from FedEx stating that FedEx was terminating Azuma's account because ATF had placed Azuma on the Non-Complaint List.

63.     After Azuma notified ATF that Azuma had not received the February 2019 ATF Notice, ATF agreed to allow Azuma an opportunity to challenge its placement on the Non-Compliant List.

64.     Though Azuma disputed the applicability of the PACT Act to its business activities, on October 9, 2019 Azuma, under protest and with a reservation of rights, submitted PACT Act Registration Form No. 1140-0098, and California's PACT Act Report Form No. CDTFA 5204-PA-1 to the State of California Department of Tax and Fee Administration, and copied ATF on the submission.

65.     On November 1, 2019, Azuma submitted a challenge to ATF's consideration of listing Azuma on the Non-Compliant List ("Nov 1, 2019, Challenge"). A true and correct copy of Azuma's Nov. 1, 2019, Challenge is attached hereto as **Exhibit 1**.

66.     In its Nov. 1, 2019, Challenge, Azuma notified ATF, among other things, that:

    a)  The PACT Act does not apply to Azuma's sales because the sales do not occur in "interstate commerce;"

    b)  The PACT Act does not expand or otherwise modify the reach of California civil regulatory law to Azuma's on-reservation conduct;

    c)  ATF may not place Azuma on the Non-Compliant List because Azuma is not a "delivery seller;"

    d)  Azuma's sales do not violate 15 U.S.C. § 376a(a)(3) because that section does not apply to Azuma's business activities; and

    e)  Azuma has registered and is reporting to the State of California.

See Ex. 1.

67.     On November 12, 2019, ATF issued a decision (the "ATF Decision") again placing Azuma on the Non-Compliant List.  In contrast to the initial placement on the Non-Compliant List, which was based on alleged failures to register and submit reports under 15 U.S.C. § 375,

in this instance the ATF Decision was based on the PACT Act's "delivery sales" provisions

concluding that Azuma had "shipped cigarettes into the State of California that are untaxed,

unstamped, unsafe and not permitted by the California directory to unlicensed entities, all

in violation of 15 U.S.C. § 376a(a)(A)(B) and (D)." A true and correct copy of the ATF

Decision is attached hereto as **Exhibit 2**.

68.    On February 7, 2020, Azuma submitted a response to the ATF Decision requesting that the

Decision be rescinded. In the Response, Azuma notified ATF, *inter alia*:

   a) That, while Azuma disagreed with ATF's analysis and conclusions, Azuma had
      made changes to its operations "to operate within the parameters of" the ATF
      Decision.

   b) That the ATF Decision contained several factual inaccuracies, including:

      i.    That warning letters sent by the State of California to Azuma were about
            Azuma brand cigarettes;

      ii.   That under California law, state taxes apply to a sale of cigarettes from
            Azuma, a manufacturer, to Tribal Retailers;

      iii.  That Azuma cigarettes have not been certified as fire-safe.

   c) That the ATF Decision deprived Azuma of due process by failing to provide
      Azuma with a meaningful opportunity to respond to assertions and arguments
      made by the State of California;

   d) That the ATF erred in determining that California civil regulatory law and
      taxation applied to Azuma's sales to Tribal Retailers;

   e) That the ATF Decision violates the PACT Act's exclusions regarding Indian
      tribes and tribal matters;

   f) That the ATF Decision unlawfully amends, modifies, or otherwise affects tribal-
      state gaming compacts and California laws pertaining to such compacts;

   g) The ATF Decision ignores the unique circumstances that prohibit the application
      of California law to Azuma's sales, including that Azuma's sales are to Tribal
      Retailers that are wholly owned by federally recognized Indian tribes that are not
      subject to State tax or regulatory jurisdiction; and that California law contains no
      mechanism to account for untaxable on-reservation sales to tribal members and

casino patrons.

A true and correct copy of the February 7, 2020, letter is attached hereto as **Exhibit 3**.

69.    On March 2, 2020, ATF responded to Azuma's February 7, 2020, correspondence.  The substance of ATF's response consisted of forwarding a letter dated February 25, 2020, from a State of California Deputy Attorney General, and ATF's statement that "California continues to disagree with your analysis and therefore, decline to withdraw Azuma Corporation from the noncompliant list." Attached hereto as **Exhibit 4** is a true and correct copy of the March 2, 2020, letter from ATF, including the letter from the State of California dated February 25, 2020.  ATF conducted none of its own analyses of California's position set forth in the February 25, 2020, letter.

70.    On April 10, 2023, by letter from Azuma to ATF, Azuma requested that ATF remove Azuma from the Non-Compliant List.  Azuma informed ATF that Azuma is not a "delivery seller" because its cigarette sales are not made to "consumers" as defined in the PACT Act, and that the California Directory Statute is unenforceable against Azuma as a matter of law. A true and correct copy of the April 10, 2023, letter is attached hereto as **Exhibit 5**.

71.    ATF has not responded to Azuma's April 10, 2023, letter.  On information and belief, Azuma is still included on the Non-Compliant List.

## V.    CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Violation of the Administrative Procedure Act**
**(Violation of PACT Act Procedural Requirements)**

72.    Azuma realleges all paragraphs set forth above and incorporates them herein by reference.

73.    Defendants failed to use "reasonable procedures" in preparing and revising the Non-Compliant List to ensure "maximum possible accuracy and completeness" of the records

and information relied on by Defendants in determining whether Azuma is compliance with

the PACT Act, in violation of the Azuma's rights thereunder. 15 U.S.C. § 376a(e)(1)(E)(i).

74.    Defendants failed to investigate Azuma's challenge to California's request that Azuma be

placed on the Non-Compliant List "by contacting the relevant Federal, State, tribal, and

local law enforcement officials" within 30 days, as required under law. 15 U.S.C. §

376a(e)(1)(E)(iv). Indeed, ATF's Final Determination was dated 12 days after the date of

Azuma's November 1, Response. Upon information and belief, Defendants never contacted

any relevant Tribal officials during the investigation period, as required by law, and relied

instead exclusively on unsupported and erroneous representations of California officials.

75.    At no time did Defendants provide Azuma with an opportunity to review or meaningfully

respond to evidence, allegations or arguments submitted to ATF by California,

(notwithstanding Azuma's requests), while at the same time, ATF provided California the

opportunity to review and respond to Azuma's responses to ATF.  Defendants' failure to

provide Azuma with such information deprived Azuma of the opportunity to meaningfully

respond to such evidence, allegations or arguments made by California, upon which ATF

based its Decision.

76.    Defendants' actions in arriving at their conclusion that Azuma was in violation of law were

arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

77.    Defendants' actions were in excess of statutory jurisdiction, authority or limitations, and

short of statutory right.

**SECOND CAUSE OF ACTION**
**Violation of the Administrative Procedure Act**
**(Wrongful Placement on the Non-Compliant List)**

78.    Azuma realleges all paragraphs set forth above and incorporates them herein by reference.

79. Defendants are interpreting and implementing the PACT Act in a manner that is contrary to the provisions, and in excess of the statutory language, of the Act. Specifically, this has occurred with respect to the following PACT Act amendments of the Jenkins Act of October 19, 1949, c. 699, 63 Stat. 884, 15 U.S.C. § 375 et seq., relating to requirements on remote or "delivery sales" of tobacco products.

80. Defendants' November 12, 2019, Decision states that the PACT applies to "any person who ships cigarettes into a state." Ex. 2, at 1. Defendants' statements are arbitrary and capricious and without any basis in the plain language of the Act.

**Azuma is Not Engaged in "Interstate Commerce"**

81. The PACT Act's reporting and registration requirements apply only to "any person who sells, transfers, or ships for profit cigarettes or smokeless tobacco *in interstate commerce*." 15 U.S.C. § 376(a) (emphasis added).

82. At all relevant times, Plaintiff Azuma did not sell, transfer, or ship for profit cigarettes or smokeless tobacco "in interstate commerce" under the PACT Act.

83. The PACT Act defines "interstate commerce" as "commerce between a State and any place outside the State, commerce between a State and any Indian country in the State, or commerce between points in the same State but through any place outside the State or through any Indian country." 15 U.S.C. § 375(9).

84. The PACT Act defines "Indian Country" as having "the meaning given that term in 18 U.S.C. § 1151" and as including "any other land held by the United States in trust or restricted status for one or more Indian tribes." 15 U.S.C. § 375(7).

23

85.   Plaintiff Azuma is not required to register or report under the PACT Act. It neither advertises, offers, nor engages in the sale, transfer, or shipment of cigarettes or smokeless tobacco in interstate commerce for profit or otherwise under the PACT Act.

86.   Azuma's business involves no transactions either (i) between states; (ii) between Indian country and a state; or (iii) between points in a state, whether "through" any Indian country or any place outside the state. Azuma's business activities are exclusively inter-tribal and take place entirely between Indian country in the same state.

87.   Defendants' actions complained of herein are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

88.   Such actions also are in excess of statutory jurisdiction, authority or limitations, or short of statutory right.

**THIRD CAUSE OF ACTION**
**Violation of the Administrative Procedure Act**
**(Wrongful Placement on the Non-Compliant List)**

89.   Azuma realleges all paragraphs set forth above and incorporates them herein by reference.

90.   Defendants placed the Azuma on the Non-Compliant List based on Defendants' arbitrary, capricious and unlawful determination that Azuma is a "delivery seller" engaged in "delivery sales."

91.   The PACT Act regulates delivery sales by delivery sellers. 15 U.S.C. § 376a.

92.   The PACT Act's requirement to file reports with state, local and tribal officials also applies only to delivery sellers operating in interstate commerce.  15 U.S.C. § 376(a)(2) (requiring report to identify "the person delivering the shipment to the recipient on behalf of the delivery seller").

93. The PACT Act defines "delivery sale" as, among other things, "any sale of cigarettes or smokeless tobacco *to a consumer*." 15 U.S.C. § 375(5) (emphasis added). The PACT Act defines "consumer" as "any person that purchases cigarettes or smokeless tobacco" *who does not also* lawfully operate as a "manufacturer, distributor, wholesaler or retailer of cigarettes or smokeless tobacco." 15 U.S.C. § 375(4).

94. In its November 12, 2022, Decision, ATF states, "ATF can undertake an analysis as to whether a tribal business is complying with State law in considering whether a business is lawfully operating under the PACT Act." Ex. 2, at 8.

95. ATF arbitrarily and capriciously determined that Azuma's customers, Tribal Retailers, are not lawfully operating under the PACT Act because the Tribal Retailers are not licensed by the State of California and do not pay California State cigarette taxes. *Id.* at 9.

96. The California Cigarette and Tobacco Products Licensing Act of 2003, provides, "No person is subject to the requirements of [the Act] if that person is exempt from regulation under the United States Constitution, the laws of the United States, or the California Constitution." Cal. Bus. & Prof. Code § 22971.4.

97. The Tribal Retailers that purchase Azuma's cigarettes operate entirely within their respective Indian Country. As such, the Tribal Retailers are exempt from relevant regulation by the State of California under the United States Constitution and the laws of the United States, including decisions of the United States Supreme Court. *See Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 480 (1976) (holding on-reservation tribal retailer not required to hold state cigarette retailer's license); *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134 (1980) (weighing state's interest in taxing cigarette sales to non-members against Indian tribes' interest in

governing on-reservation "activities involving the Tribes" and raising revenue from "value generated on the reservation").

98. The State of California has previously informed tribally owned cigarette sellers who make on-reservation sales that they need not obtain a license from the State.

99. California laws regarding cigarette sales at tribal gaming facilities are also preempted by IGRA, 25 U.S.C. §§ 2701 *et seq*.

100. Cigarette sales by Tribal Retailers at tribal gaming facilities are exempt from regulation and taxation by the State of California.

101. Defendants' determination that Azuma is a "delivery seller" engaged in "delivery sales" under the PACT Act because the Tribal Retailers do not pay California cigarette tax, or hold a license issued by California, or comply with California law regarding cigarette sales effectively amends, modifies and/or affects the Tribal-State Compacts between the Tribes that own the Tribal Retailers and the State of California, and as such, violates the PACT Act, Pub. L. 111-154, Sec. § 5(a)(1), and is arbitrary, capricious and contrary to law.

102. Defendants' determination that Azuma is a "delivery seller" engaged in "delivery sales" under the PACT Act because the Tribal Retailers do not pay California cigarette tax, or hold a license issued by California, or otherwise comply with California law regarding cigarette sales effectively amends, modifies and/or affects the California legislature's ratification of the Tribal-State Compacts between the tribes that own the Tribal Retailers and the State of California, Cal. Gov. Code 12012.25, et seq., and as such, violates the PACT Act, Pub. L. 111-154, Sec. § 5(a)(2), and is arbitrary, capricious and contrary to law.

103. Defendants' determination that Azuma is a "delivery seller" engaged in "delivery sales" under the PACT Act because the Tribal Retailers do not pay California cigarette tax, or hold

a license issued by California, or otherwise comply with California law regarding cigarette sales effectively amends, modifies and/or affects IGRA, 25 U.S.C. § 2701, et seq., because IGRA preempts California's ability to impose state cigarette taxes and regulations to sales at tribal gaming facilities, and as such, violates the PACT Act,  Pub. L. 111-154, Sec. § 5(a)(3), and 15 U.S.C. § 375(4), and is arbitrary, capricious and contrary to law.

104.  Defendants' determination that Azuma is a "delivery seller" engaged in "delivery sales" under the PACT Act because the Tribal Retailers do not pay California cigarette tax, or hold a license issued by California, or otherwise comply with California law regarding cigarette sales effectively amends, modifies and/or affects federal common law regarding state's authority to tax or regulate cigarette sales in Indian Country, including as reflected in decisions of the United States Supreme Court, and as such, violates the PACT Act,  Pub. L. 111-154, Sec. § 5(a)(3), (4) and (5), and 15 U.S.C. § 375(4), and is arbitrary, capricious and contrary to law.

105.  Defendants' actions also are in excess of statutory jurisdiction, authority or limitations, or short of statutory right.

**FOURTH CAUSE OF ACTION**
**Violation of the Administrative Procedure Act**
**(Wrongful Placement on the Non-Compliant List)**

106.  Azuma realleges all paragraphs set forth above and incorporates them herein by reference.

107.  In its November 12, 2019, Decision, ATF concludes that "The cigarettes that [Azuma] distribute[s] . . . are not on the California directory and may not be legally imported into, purchased, or sold in the state. Accordingly, your customers are not lawfully operating when they illegally distribute these cigarettes." Ex. 2 at 10.

27

108.  In order to be placed on the California directory, a cigarette manufacturer is required to place into a qualified escrow fund specified amounts of money according to the number of "units sold." Cal. Health & Safety Code § 104557(a)(2); Cal. Rev. & Tax. Code § 30165(b), (c)(1)(B). The term "units sold" is defined as:

> [T]he number of individual cigarettes sold to a consumer in the state by the applicable tobacco product manufacturer, whether directly or through a distributor, retailer or similar intermediary or intermediaries, during the year in question, regardless of whether the state excise tax was due or collected. *"Units sold" shall not include cigarettes* sold on federal military installations, *sold by a Native American tribe to a member of that tribe on that tribe's land, or that are otherwise exempt from state excise tax pursuant to federal law.*

Cal. Health & Safety Code § 104556(j) (emphasis added).

109.  Azuma sells cigarettes to Tribal Retailers that are wholly owned and operated by federally recognized Indian tribes. The only way that Azuma could incur an escrow obligation under the California Health and Safety Code and/or Revenue and Taxation Code is if the Tribal Retailers subsequently sell Azuma-branded cigarettes to consumers for whom an escrow calculation is required.

110.  Azuma has no escrow obligation for cigarettes that Tribal Retailers sell in their respective Tribes' Indian Country to members of such Tribe, or to any consumers at tribal gaming facilities that are the subject of tribal-state gaming compacts with the State of California, or to any other consumers exempt from state excise tax pursuant to federal law.

111.  California law does not provide a mechanism for cigarette retailers or distributors to report to manufacturers, such as Azuma, the number of cigarettes "sold by a Native American tribe to a member of that tribe on that tribe's land, or that are otherwise exempt from state excise tax pursuant to federal law."  Cal. Health & Safety Code § 104556(j). Nor does California

law provide a mechanism by which cigarette retailers record the identity or tribal affiliation of persons purchasing cigarettes.

112.    California law thus contains no mechanism for Azuma or any Tribal Retailer to report Azuma-branded cigarettes that are sold downstream to tribal members or that are sold at tribal gaming facilities, or which, as a matter of California law and federal law, are otherwise exempt from the California cigarette excise tax.

113.    There is no mechanism under California law for Azuma to ascertain the number of "units sold" and to calculate, report and deposit the appropriate escrow payment, if any.

114.    California thus has unlawfully failed and refused to list Azuma on its directory by requiring Azuma to perform an impossible act, in violation of Cal. Civ. Code § 3531, which provides that "The law never requires impossibilities."

115.    ATF, by placing Azuma on its Non-Compliant List because it is not listed on the California directory, is also unlawfully requiring Azuma to perform an impossible act. Alternatively, ATF is unlawfully requiring Azuma to report to the State of California, and to pay money into escrow at the insistence of the State of California, for cigarette sales that are exempt from state excise tax under both California law and federal law, and for which no reporting or escrow is required.  ATF's actions are arbitrary, capricious and contrary to law.

### FIFTH CAUSE OF ACTION
**Violation of the Administrative Procedure Act**
**(Wrongful Placement on the Non-Compliant List)**

116.    Azuma realleges all paragraphs set forth above and incorporates them herein by reference.

117.    ATF's decision to place Azuma on the Non-Compliant List is based on its determination that Tribal Retailers are not "lawfully operating," as that term is used in the PACT Act,  15 U.S.C. § 375(4)(B). Ex. 2, at 9-11.

118.  ATF claims that Tribal Retailers are not "lawfully operating" because the Tribal Retailers sell Azuma-manufactured cigarettes to non-Indians without collecting California's excise taxes. Ex. 2, at 8.

119.  ATF's decision fails to take into account that on-reservation transactions involving a tribe and non-Indians are subject to the *Bracker* balancing test. *See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136 (1980). Under the *Bracker* balancing test, a tribe's interest is strongest when the revenues are derived from value generated on a reservation by activities involving the Tribes and when the taxpayer is the recipient of tribal services. *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 156-57 (1980).

120.  Under the *Bracker* balancing test, the "federal policy of promoting tribal self-sufficiency and economic development" weighs in favor of finding that a state tax is preempted by federal law. *Bracker*, 448 U.S. at 143–44.

121.  The Tribal Retailers are not merely importing a product onto their reservations for immediate resale to non-Indians. The Tribal Retailers have "built modern facilities which provide recreational opportunities and ancillary services to their patrons, who do not simply drive onto the reservations, make purchases and depart, but spend extended periods of time there enjoying the services the Tribes provide." *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 219 (1987).  But for tribal gaming facilities, there would be no market for cigarette sales in the Indian Country of the Tribal Retailers.  Accordingly, California's excise tax is preempted by federal law with regard to cigarette sales at tribal gaming facilities.

122.  ATF's decision to place Azuma on the Non-Compliant list because the Tribal Retailers are not "lawfully operating" thus is arbitrary, capricious and contrary to law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered in its favor and against

Defendants as follows:

1. Declare that Defendants' placement of Azuma on the Non-Compliant List and their failure
   refusal to remove Azuma from the Non-Compliant List were wrongful under the PACT Act
   and arbitrary and capricious and a violation of the APA;

2. Issue an order enjoining the Defendants from enforcing the November 12, 2019, Decision
   and compelling Defendants to remove Azuma from the Non-Compliant List;

3. Award costs, fees and expenses, and reasonable attorneys' fees and expenses, to Plaintiff
   pursuant to and in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412; and

4. Grant such other further relief as the Court may deem just and proper.


Respectfully submitted this 16th day of June 2023,

/s/ Conly J. Schulte
DC Bar No. NE20158
Conly J. Schulte
PEEBLES KIDDER BERGIN & ROBINSON LLP
945 Front St.
Louisville, CO 80027
(303) 348-8828
cschulte@ndnlaw.com

John M. Peebles
DC Bar No. NE15735
PEEBLES KIDDER BERGIN & ROBINSON LLP
2020 L Street, Suite 250
Sacramento, CA 95811
(916) 441-2700
jpeebles@ndnlaw.com